Good morning, Your Honors. May it please the Court, Rajiv Matreja for the Plaintiff-Edward Furnace, and I'd like to reserve three minutes of my time for rebuttal. Your Honors, the District Court, when applying claim preclusion to dismiss Mr. Furnace's equal protection and retaliation claims, committed three distinct errors, each of which is an independent basis for reversal by this Court. Most fundamentally, the District Court misapplied California's primary rights rule of claim preclusion by wrongly holding that Mr. Furnace's retaliation and equal protection claims and his different claims he previously litigated in California State court through his habeas petition all concerned the same singular harm, namely, his wrongful placement in his prison-secured housing unit, or SHU. That holding wrongly focused on the facts defining Mr. Furnace's claims. When California law is clear that factually identical claims can be filed in multiple proceedings and can be pursued separately. But you can't have inconsistent facts, right? Certainly, Judge Kagan. So if you've got your claim preclusion, you've got your issue preclusion, and why isn't the consequence of his habeas that we have to accept that, in fact, he was put in the SHU validly? That we have to take as a given, right? So issue preclusion absolutely applies and prevents Mr. Furnace from relitigating any issues that were resolved against him in the habeas context. However, that habeas proceeding does not undercut the retaliation and equal protection claims that are at issue here. This is the case. Should I interrupt you there? Oh, wait a minute. Please. No, I was actually just going to follow up and say how would that look? Maybe that was the same question. I think we have the same issue. Yes. Is this validly – I think what the district – or, forgive me, State superior court decided is that there's some evidence that he was affiliated with a gang. Is that right? Yes. Okay. So why does – does that preclude a retaliation claim? It does not, Your Honor. And this Court has squarely held that in the Bruce case. The Hines case also holds that. In both of those cases, this Court made clear that the sum evidence standard that is used to adjudicate due process claims about placement into the SHU does not apply to retaliation claims. Okay. Since we're here, I have the same question about the equal protection claim. If there were two prisoners side by each in two different cells, and one of them was a person of color and one of them is not, and they both have the same reading material, and one of them is validated as being a member of a gang, affiliated with a gang, because that reading material is sum evidence, does that preclude an equal protection claim? The sum evidence standard only applies – this Court has only held that the sum evidence standard applies to due process claims. I think recognizing that retaliation claims and equal protection claims seek to vindicate harms that are different from the harms at issue with a due process claim. Okay. So this gets back to your primary rights argument. You're arguing, which I find primary rights doctrine is always slippery as far as I'm concerned. It's a little difficult for me to reconcile. And – but I think you come back to what is the harm being alleged. Exactly, Your Honor. It comes down to what harm is being alleged, and I think the California courts in both the George and the Henderson cases have made clear that a claim that a decision is substantively wrong is distinct from a claim that a decision is wrongly motivated due to retaliation or for race or some other reason. And so those two classes of claims can indeed be brought separately, as is the case here. Even though he's validated, because there's some evidence he's affiliated with a gang, your position is there's a separate harm, which is the retaliation claim. Exactly, Your Honor, yes. And of course, in the lawsuit about retaliation, issue preclusion would be available to prevent Mr. Furness from relitigating the things that were determined in State court. Or what? Just that there's some evidence that he's affiliated with a gang? Yes. But because this Court in Bruce and Hines held that that some evidence standard does not apply to the validation decision for purposes of retaliation, that's not something that would bind him from relitigating the question in this Court. The defendants here don't really offer in their papers much answer to the California law that distinguishes between claims that a decision is substantively wrong from claims that a decision is wrongly motivated. They largely focus on this Court's Gonzales decision, but for several reasons, that case does not control the result in this case. The parties in Gonzales agreed that the exact same primary right was at issue in the State case and in the subsequent Federal case. And the prisoner there simply argued that the same primary right can be split into multiple actions so long as a prisoner brings substantive claims in one action and procedural claims in the other action. That sort of an automatic bright-line distinction is all this Court rejected in Gonzales. We don't ask for that here. And instead, the key here is the difference between retaliation and equal protection claims on one hand, due process claims on the other hand, and the fact that the underlying harms are different between those two cases. Separate from the difference in primary rights that's at issue between the two cases, there are two other reasons that this Court can reverse the decision below. The first is the fact that this case involves different parties from the State action. The defendants in this case undisputedly were not parties to Mr. Furness's habeas action. Now, they claimed in their brief that that issue of mutuality just isn't one that is required under California law, but the California Supreme Court in the D.K. N. Holdings case recently squarely rejected that argument. The defendants argued in their letter recently submitted to this Court that, in fact, they're in privity with Mr. Furness's custodian, and so as a result, they can avail themselves of their affinity with that case. However, the defendants here were sued in their individual capacity, and it is – it has been held by numerous courts, including the Fourth Circuit and the Eighth Circuit, that even when the exact same party is at issue, they are not in privity with themselves if they're sued in their individual capacity in one case and in their official capacity in the other case. And so there's no privity here, and mutuality as a result is another reason that the decision below may be reversed. A third reason is the fact that Mr. Furness seeks in this case money damages that he could not have possibly sought in his habeas petition. California courts have been – have noted this repeatedly, and the defendants don't dispute that point. And here, too, the law is clear that if you seek relief that you could not have possibly sought in your first action, you cannot be barred through claim preclusion. And, again, I just want to emphasize that what we're talking about here is claim preclusion of claims that Mr. Furness has never litigated. No court has ever addressed these allegations. No court has ever rejected them. Issue preclusion is always available to prevent the relitigation of things that were decided against Mr. Furness below. But claim preclusion, which is particularly narrow under California law, operates here to bar claims that were never litigated, and the district court misapplied that doctrine here. If the court has no ---- Roberts, was Mr. Gonzales seeking damages? I believe that he was, Your Honor, yes. And then wouldn't that have made our – doesn't that make – doesn't your argument make our decision in Gonzales wrong? Well, Your Honor, I don't believe that the defendant in Gonzales raised the point, so I don't think it was before the court. The court's decision certainly doesn't acknowledge the argument, and I don't believe it was raised in the briefs as well. If the court has no further questions at this time, I'd like to reserve the rest of my time for rebuttal. Okay. Good morning, Your Honor. May it please the Court. Jose Zolil and Cepeda, Attorney General's Office for Defendants. This is not the first situation in which this Court confronts the issue of whether a previous State habeas action to a later 1983 action. This Court's decision last year, as Opposing Counsel alluded, in Gonzales v. California, I submit to the Court his own point on all of the issues that he raises. But in Gonzales, the parties did stipulate that the same primary right was at issue. It seems to me that's distinguishable. Why – what am I missing? Your Honor, the Court did more than just adopt the party's stipulation, for lack of a better term. The Court actually went on to say – to point out the fact that we're talking about, even though different claims – and there's essentially the same claims that were at issue there, retaliation and equal protection. The Court pointed out that it was pertaining to the same defendants, the same events, the same type of situation that was at issue. And what it contrasted it to was Brodheim v. Cry, where we're talking about two different incidents, and therefore there was a procedure and a substantive type of right. And what I think it's important to keep in mind is what it is that we're trying to avoid by these types of preclusive doctrines, and that is independent judgments. We're trying to avoid an individual trying to get a second bite at the proverbial apple this way. Now, over here, we have one incident that led to allegedly different harms on the part of the plaintiff, so he could have raised them before. And therefore, irrespective of whether – well, first of all, I don't think it's a correct characterization to say that Gonzales relied solely on the party's stipulation. I'm sorry, I missed that. I don't think it's a fair characterization to say that Gonzales relied solely on the party's stipulation. The Court actually went on to analyze and explain why they were the same primary right that was at issue. Okay. So maybe the opinion says I think that they agreed, but you're just saying you think the Court analyzed that independently, is that it? Yes. Yes, Your Honor. That's a better way of putting it. And if I could, it's – the Court's discussion is on page 1234, and it says, when challenging the same actions by the same group of officials at the same time resulting in the same harm, Gonzales cannot escape plaintiff claim preclusion by leaving link his state habeas challenge procedural and his 1983 action substantive. So it's – the Court did analyze what was at issue. And I think the first case which involved a retaliation allegation, I think it's actually a very similar type of situation. Over there, the allegation seemed to involve that there was retaliation separate apart from the denial of the permit, which was, I think, the underlying harm. Over here, what we have is the underlying harm is the same, which is the validation. The complaint that Mr. Furness filed in district court here alleged that they – Bruce has a reference. Which case, Your Honor? Bruce. Bruce talks about the fact that there is a separate harm that's at issue in retaliation claims, which is the right not to be retaliated. My point is that the underlying harm in terms of what – under the primary rights here would be the validation. Because Mr. Furness does not allege that, for example, some individuals retaliated against him when he was complaining about the validation by threatening him. He said that the ultimate – basically what he was complaining about and what he's trying to get out of is the validation process itself. And if you look at California's primary rights doctrine, that would be the focus of the analysis rather than these separate allegations. Now, let's assume if you – I don't understand your answer to my question at all. Bruce. Right. that you can be, in fact, guilty of a violation, but you can still raise a retaliation claim. And the theory, I guess, would be that there may be many people that could be picked off of violations, and if they happen to, as a matter of retaliation, they – or racism or some other impermissible motive, they pick on this plaintiff or in this class of prisoner, then you have a retaliation claim, even though they got you debt to rights on the underlying violation. That's what I read Bruce to say. Am I confused here?  I agree that with the – If I'm not confused and it does say that, then how do you get out from under that? Because another aspect of the retaliation claim that the plaintiff would have to establish was that the actions that he complains about, in this case the validation, lacked a legitimate penological interest, which is an issue that was decided by the state habeas court, which gets you back to – I'm sorry? He would have to do what? He would have to show that the actions that he complained of, the ultimate result, lacked a legitimate penological interest. That's another aspect of a retaliation claim. And the Supreme Court has held in the employment context in Hartman v. Moore that in order to show that, an individual has to show that the allegedly retaliatory action was the but-for reason for – that the retaliation was the but-for reason for the ultimate result. And that's where you get into the concerns about having inconsistent judgments between the state court decision and the federal cause of action that Mr. Fern has attempted to raise here from the same underlying harm. Separately, I wanted to address the different parties issue that plaintiff raises. Again, I'd submit to the Court that Gonzalez is on point on this particular issue because in that case it involved, again, a habeas action, which by state law must name the custodian of the individual as a defendant. And therefore, if plaintiff's reading of California primary – California claim preclusion doctrine were accurate, then there would never be preclusive effect to previous habeas actions, which is contrary to what this Court has already held. Moreover, if you look at the privity analysis, the type of situations which the California Supreme Court has said are the types of situations where privity applies are at issue here. For example, you have situations where there's a contractor or subcontractor, a corporation and its employees. What you have here is the state habeas action, which named the warden, but the warden defended the actions of the underlying individuals, which were all at issue in that case. The same type of privity applies here, unless there's any further questions. Okay. Thank you. Thank you. You have obtained a couple of minutes for rebuttal, or most of a couple of minutes. Thank you, Your Honors. A few quick points. One regarding the Gonzales case. Counsel highlighted language on page 1234 of this Court's opinion in Gonzales. And I just want to return to that, because I think it actually shows how Gonzales does not control this case.  It also points out same officials, and under your theory, that doesn't work, does it? Exactly. Exactly. I mean, Gonzales is inconsistent with your theory. That's right. Because in Gonzales, they had to be sued in their official capacity in the first instance, and then in their individual capacity in a 1983 suit. That's right. And again, I think that's an argument that just wasn't raised in Gonzales, but I think that's an argument that that's going to bar claim preclusion out of any of these claims, won't it? It would certainly make claim preclusion. It would be the end of a claim preclusion argument. But it would do nothing to issue preclusion, or that privity is not required, or that relationship between the defendants in both actions is not required. Claim preclusion is really just operating to bar claims that were never raised. And so it makes sense, I think, to have that doctrine be narrow in its effect. The California courts have actually been quite explicit that it's a pretty narrow doctrine under California law. And that's because issue preclusion can be quite robust in how it prevents the relitigation of things that a prisoner brought up in an initial habeas action. You know, counsel referred to how this is Mr. Fern is trying for a second bite. Not so. This is his first bite still on retaliation and equal protection. And the result of the lawsuit, if your client were to prevail here, ultimately, is that he stays in the shoe, but he gets money. Is that right? I think, yes, Your Honor. What does he do with it there? What's that? What does he do with the money in the shoe? He can spend his money on reading material and other sorts of. Just not stuff on George Jackson. Right, exactly, Your Honor. But ultimately, the money damages are what many courts have held exist to vindicate this violation of constitutional rights, even if he is correctly in the shoe. And Bruce, I think, makes that as clear as can be. If the Court has no further questions. And whether he's correctly in the shoe or not is not going to be revisited in your case. Is that correct? That is correct. All right. That is correct, yes. If the Court has no further questions, we ask that the Court reverse the district order. Thank you. Thank you, Your Honor. Cage-Lasagna will stand submitted. We'll adjourn.
judges: Kozinski, Bybee, Christen